**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jim Langan,<br><br>         Plaintiff,<br><br>   v.<br><br>Town of Cave Creek,<br><br>         Defendant. | No. CV-06-0044-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court are Plaintiff Jim Langan's Motion for Summary Judgment (Doc. 16) and Defendant Town of Cave Creek's (Town) Cross Motion for Summary Judgment (Doc. 35) both filed pursuant to the provisions of Fed.R.Civ.P. 56.

Plaintiff Jim Langan is a citizen and property owner in the Town of Cave Creek, and the owner and operator of the Full Circle Bed and Breakfast ("Full Circle B&B") located in Cave Creek. (Doc. 1, ¶ 1). Defendant Town of Cave Creek is a municipality, duly organized under the State of Arizona, which makes policy through its town council. (Doc. 1, ¶ 2). Plaintiff operated Full Circle B&B under a Special Use Permit ("SUP") issued by the town council. (Doc. 1, ¶ 4). When the SUP came up for renewal, the town council granted the SUP for an additional five (5) years at a properly noticed meeting held on March 1, 2004. (Doc. 1, ¶ 8). On May 17, 2004, the town council met allegedly without proper notice, reconsidered, and discontinued the extension of the SUP previously granted. (Doc. 1, ¶¶ 12-13).

1  On January 25, 2006, Defendant moved to dismiss this action for failure to state a claim upon which relief can be granted. (Doc. 7). Among several reasons, Defendant asserted Plaintiff's federal takings claim was not ripe, and there was no protected property interest in a SUP that required due process. (Doc. 7).

On June 22, 2006, the Court granted in part and denied in part Defendant's Motion to Dismiss Plaintiff's Complaint. The Court found that Count One of Plaintiff's Complaint properly stated a procedural due process claim under 42 U.S.C. 1983 against Defendant Town of Cave Creek. However, Counts Two and Three of Plaintiff's Complaint were dismissed without prejudice. Thereafter, on November 9, 2006, Plaintiff filed a Motion for Summary Judgment (Doc. 16). Relying on 42 U.S.C. § 1983, Plaintiff alleged a violation of his procedural due process rights guaranteed by the Fourteenth Amendment to the United States Constitution (Doc. 1, Count I). Subsequently, on January 25, 2007, Defendant filed a Response to Plaintiff's Motion for Summary Judgment, as well as a Cross Motion for Summary Judgment (Doc. 35). Both motions for summary judgment are fully briefed and ripe for disposition. After careful consideration, the Court issues the following ruling.

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger*, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

## **DISCUSSION**

### **I. Violation of Procedural Due Process**

A threshold requirement to a procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution. *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). The Fourteenth Amendment's procedural protection of property safeguards the interests that a person has already acquired in specific benefits, and these property interests may take many forms. *Board of Regents v. Roth*, 408 U.S. 564, 576 (1972). "Property interests, of course, are not created by the Constitution." *Greene v. Babbitt*, 64 F.3d 1266, 1272 (9th Cir. 1995) (quoting *Board of Regents*, 408 U.S. at 577 (1972)). Rather, protected property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law. *Id.* To have a property interest in a certain benefit, a person must have a legitimate claim of entitlement, rather than an abstract need or unilateral expectation of it. *Id.* at 1271. A violation of procedural due process is a two step process. *Brewster v. Board of Educ. of Lynwood Unified School Dstr.*, 149 F.3d 971, 982 (9th Cir. 1998). Thus, after establishing

1  a deprivation of a constitutionally protected liberty or property interest, a plaintiff must then
2  establish the denial of adequate procedural protections. *Id.*

3   In his Motion for Summary Judgment (Doc. 16), Plaintiff asserts that by virtue of the
4  express terms of the SUP, he has a protected property interest in the SUP. Further, having
5  spent time, energy, and funds improving his property in reliance on the SUP, he maintains
6  that he has a *vested* property interest in the SUP.  Plaintiff's argument that he was denied
7  adequate procedural protections centers around his contention that Defendant failed to
8  provide him with adequate notice of the SUP revocation proceedings.  Finally, Plaintiff
9  requests the Court to set the matter for trial on the amount and extent of Plaintiff's damages.

10  In its Cross Motion for Summary Judgment, Defendant contends that Plaintiff did not
11  have a constitutionally protected property interest in the SUP and that he was given
12  reasonable notice of the meeting wherein the revocation of his SUP would be considered.
13  Furthermore, Defendant contends that in the event that the Court determines that Plaintiff did
14  in fact have a protected property interest and that notice was not reasonable, Plaintiff should
15  be prohibited from collecting damages due to his failure to mitigate his damages.

16  **A.   Protected Property Interest**

17  **1.   Express Terms of the SUP**

18  Plaintiff relies on the actual language of the SUP in his assertion that he has a
19  protected property interest in the SUP. He maintains that, according to the express terms of
20  the permit, the SUP was not one which was revocable at will. "The Special Use Permit **shall**
21  run for a period of five years..." (Doc. 16). *See Walter v. Wilkinson*, 10 P.3d 1218, 1219
22  (Ariz.App. Div. 1,2000)(use of the word "may" generally indicates permissive intent, *Crum*
23  *v. Maricopa County,* 950 P.2d 171, 173 (App.1997), while "shall" generally indicates a
24  mandatory provision. *In re Guardianship of Cruz,* 741 P.2d 317, 318 (App.1987))[1]. Plaintiff
25  avers that because of the mandatory nature of the word "shall" included in the durational

---

28  [1] The cases cited by Plaintiff pertained to the use and interpretation of mandatory and precatory language in *statutes*.

provision of the SUP, he had a reasonable expectation that the SUP would not be revoked for a period of at least five (5) years.

Defendant counters Plaintiff's argument with the assertion that the terms of the SUP were not in fact mandatory-that the terms of Plaintiff's SUP actually provided the Town with the authority to revoke the permit for cause, i.e. where Plaintiff violated the conditions of the SUP, the SUP was subject to discontinuance.[2] On April 12, 2004, the Town sent Plaintiff a letter defining the six "Conditions of Approval" mandated by the Town Council. The letter also notified Plaintiff that the Town had received and verified two complaints regarding "activities that are clearly in violation of those Conditions of Approval." Although initially disputed by Plaintiff, the Court finds that Plaintiff's Reply Brief illustrated an understanding that because there are conditions that subject his SUP to discontinuance, the SUP is not irrevocable as a matter of law.[3] (Doc. 37). Essentially, if the Court were to accept Plaintiff's argument pertaining to the word "shall", the conditions included in the SUP would be rendered moot. In turn, there would be no avenue by which the Town could prevent noncompliance with the terms of the SUP and no course for the Town to take should the SUP be used inappropriately. Accordingly, the Court finds that despite the fact that the term "shall" was included in the durational provision of the SUP, because the SUP was in fact subject to conditions and therefore subject to discontinuance for noncompliance with those conditions, Plaintiff has not established that he has a protected property interest merely by virtue of the express terms of the SUP.

---

[2]For example, on March 5, 2004, the Town sent Plaintiff a letter regarding the violations that Plaintiff himself had disclosed at the March 1, 2004 public hearing. The letter provided in part, "a continued verified violation of the ordinance would be possible cause for revocation of the special use permit by the Town Council." (Doc. 35, Ex. 1).

[3]Plaintiff's argument switches from whether the SUP is revocable to the manner in which it may properly be revoked. Further, the evidence illustrates that Plaintiff conceded that he had violated the conditions of the SUP and was notified of the numerous complaints filed against him for such violations. (Doc. 35, ex.2)

### 2.     Considerable Expenses Incurred Improving Property

In the alternative, Plaintiff argues that, under Arizona law, he has a vested property right in the SUP by virtue of his capital expenditures made in reliance on the SUP. With regards to Plaintiff's vested property interest, generally "[t]he law is settled that special use permits create no vested property rights." *Paulina Lake Historic Cabin Owners Assoc. v. U.S.D.A. Forest Service*, 577 F.Supp. 1188, 1193 (D. Ore. 1983) (citing *United States v. Fuller*, 409 U.S. 488, 492-93 (1973) (further citations omitted)); *see also Pai 'Ohana v. United States,* 875 F.Supp. 680, 699 (D. Haw. 1995) (finding that the termination of special use permits did not implicate due process because the permits did not create vested property interests recognized by the Fifth Amendment), *aff'd*, 76 F.3d 280 (9th Cir. 1996).  Arizona, however, recognizes the "vested rights doctrine," in which a property owner who materially acts in reliance on an issued building or special use permit may continue to act in conformance therewith, notwithstanding arbitrary governmental withdrawal or cancellation of the permit. *Emmett McLoughlin Realty, Inc. v. Pima County*, 58 P.3d 39, 43 (Ariz. Ct. App. 2002) (*Emmett*).  To acquire a vested right to a previously issued permit authorizing *commencement of use or construction*, the property owner must physically construct improvements permitted by the use or incur substantial expenditures toward construction or establishment of the use in reliance on or in conformance with the permit. *Fidelity Nat. Title Ins. Co. v. Pima County*, 831 P.2d 426, 429 (Ariz. Ct. App. 1992) (*Fidelity*)(Emphasis added).  Thus, although special use permits do not automatically create vested property interests, a plaintiff may have a vested right *to the permit* under Arizona law if he materially acted in *reliance* on it.  *See Emmett*, 58 P.3d at 43; *Fidelity*, 981 P.2d at 429.

In reliance on the first SUP granted in 1997, it is undisputed that Plaintiff incurred considerable expenses in improving and renovating his property. Plaintiff made substantial improvements to the property to facilitate its use as a Bed and Breakfast including converting, upgrading, and remodeling the property for use as a Bed and Breakfast and

constructing two casitas, which amounted to adding 1,100 square feet to the property.[4] Such improvements and renovations are alleged to have amounted to hundreds of thousands of dollars. Plaintiff contends that under Arizona law, such expenditure coupled with his reliance entitles Plaintiff to a reasonable expectation of his continued use of the property as a bed and breakfast, i.e. a vested property right in the SUP. *Town of Paradise Valley v. Gulf Leisure Corp.*, 557 P.2d 532, 540 (Ariz. App 1970).

In defense of its argument to the contrary, Defendant highlights the distinguishing factors between the case at hand and *Town of Paradise Valley,* the case relied on by Plaintiff. In *Town of Paradise Valley,* the Court said in pertinent part,

> Once a building permit and/or a special use permit are issued as duly authorized by law, as in this case, and the permittee *has materially acted in reliance thereon and the guidelines delimited therein, the right to continue under those rules is vested and a municipality may not **arbitrarily revoke** or change the rules under which the permit was issued*.

*Town of Paradise Valley at* 540. (Emphasis added).

The Court finds that Town is focusing only on the portion of *Town of Paradise* that prohibits the arbitrary revocation of a SUP, instead of focusing on the relevance of *Town of Paradise's* conclusion that, where a special use permit has been legitimately issued and the permittee has substantially relied thereupon and incurred considerable expenses, the right to continue under the SUP becomes vested. *Id.* It is undisputed that Plaintiff incurred considerable expenses in improving and renovating his property in reliance on the SUP.[5]

Consequently, Plaintiff has established that he has a vested property interest in the SUP based on time and money spent improving the property in reliance of the SUP. Because Plaintiff has established a deprivation of a constitutionally protected property interest, the

---

[4] In his Complaint, Plaintiff alleges that he invested thousands of dollars in terms of physical renovations, upkeep, and marketing promotions in reliance upon the Special Use Permit. (Doc. 1).

[5] Town asserts that *if* a property interest existed with respect to the 1997 SUP, that interest was for a limited duration. Town neither provides authority to support its assertion nor establishes that the 2004 SUP is not in fact included in the 1997 SUP, as it was granted as an extension and not as a new and distinct SUP.

1 next step is for the Court to determine whether there was a denial of adequate procedural
2 protections. *Brewster*, 149 F.3d at 982 (9th Cir. 1998).

### B.     Adequate Procedural Protections

The United States Supreme Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974). *See, e. g. Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 596-597 (1931). *See also Dent v. West Virginia,* 129 U.S. 114, 124-125 (1889). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)(*citing Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)). Due process includes notice "reasonably calculated, under all the circumstances, to apprise interested parties" of the proceeding, and an opportunity to be heard. *S.E.C. v. McCarthy,* 322 F.3d 650, 659 (9th Cir. 2003*)(citing Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, (1950)). Federal jurisprudence has made it clear that the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, (1965); *See Grannis v. Ordean*, 234 U.S. 385, 394 (1914).

Plaintiff contends that the Town violated his procedural due process rights by failing to provide him with notice of the SUP revocation proceedings. He contends that the notice he was provided consisted of a verbal statement that the SUP would be a topic of conversation at the meeting that evening, and that the Council would discuss the issue of special conditions on the SUP. (Doc. 18, Pla. Affidavit). Thus, he avers that he was not provided adequate notice of the Council's intent to consider revocation of the permit at the May 17, 2004 meeting, nor was he provided with the factual basis or complaints underlying the revocation, in order to for him to prepare objections so he could be heard on the matter in a meaningful manner. *Armstrong*, 380 U.S. at 552, (1965); *See Grannis*, 234 U.S. at 394 (1914).

With respect to testing the adequacy of the method employed to provide notice to individuals whose property interests are at stake, the Supreme Court has regularly used the test set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Dusenbery v. United States*, 534 U.S. 161 (2002). In *Mullane* and *Dusenbery*, the Court focused on whether the notice was "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* The Court further opined that in cases such as *Dusenbery*, actual notice is not necessarily required. The Court will permit the Government to defend the "reasonableness and hence the constitutional validity of any chosen method...on the ground that it is in itself reasonably certain to inform those affected." *Dusenbery,* 534 U.S. at 170, quoting *Mullane,* 399 U.S. at 315.

The following is a summary of the measures employed by the Town to provide Plaintiff with notice of the possible revocation of the SUP:

a. **April 12, 2004**: Town's notice of two verified complaints and violation of the SUP as well as a recitation of conditions and notice that Planning and Zoning Commission will consider recommendation of discontinuance of the SUP.

b. **April 19, 2004**: Town Council Meeting wherein the Council voted 7-0 to reconsider the SUP extension at the May 17, 2004 Council Meeting.

c. Public notice, with a copy of the agenda, was posted at the Town Library on or about **May 13, 2004.**

d. Public notice, with a copy of the agenda, was posted online, at the Town's website on or about **May 13, 2004.**

e. Public notice, with a copy of the agenda, was posted at the Town Post Office on or about **May 13, 2004.**

f. Public notice, with a copy of the agenda, was posted at the Town Hall on or about **May 13, 2004.**

g. On the morning of **May 17, 2004**, the day the Town Council meeting was being held to discuss the possible revocation of Plaintiff's SUP, Zoning Administrator, Ian

Cordwell, and Town Marshall, Adam Stein, met with Plaintiff to personally inform him of the subject matters to be discussed at the meeting that night. It is disputed whether they specifically stated that the Council would consider revocation of the SUP, however, it is undisputed that they did "verbally advise Plaintiff that the Special Use Permit would be a topic for discussion at a town council meeting, and that the council would discuss the issue of special conditions and violations of the Special Use Permit." (Doc. 16, p.2-3). Defendant points out on numerous occasions in its brief that Plaintiff reasonably knew or should have known of the severity of the Council's discussions given the conditions set forth in the SUP and the general notification (without a date provided) that a hearing was forthcoming to consider the recommendation of the discontinuance or to discuss the complaints received by the Council pertaining to Plaintiff's violations of the conditions of the SUP. However, notably missing from Defendant's "recap of the notice provided to Plaintiff" was a notice delivered to Plaintiff on May 13, 2004 when all of the public notices were posted. Clearly, on May 13th the Council knew when and where the meeting would be held, as well as what topics would be discussed. Furthermore, to presume that a personal meeting informing Plaintiff that his SUP "would be a topic for discussion", held the same morning that the council was scheduled to meet to discuss the possible revocation, is sufficient notice for an individual to prepare any objections is unreasonable. The Court finds that the Town failed to provide Plaintiff with notice of the hearing wherein the revocation of his SUP would be decided that was "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and *afford them an opportunity to present their objections*." *Mullane*, 399 U.S. at 315. (Emphasis added).

## II.     Damages[6]

With respect to actual injury, the Town contends that Plaintiff should not be permitted to "sit on his claim for nearly two years", allowing his alleged damages to accrue without mitigating or altogether avoiding damages. A generally recognized principle of tort law

---

[6] On September 18, 2006, the Town Council voted to reinstate Plaintiff's SUP, with specific conditions.

- 10 -

dictates that there can be no recovery for reasonably avoidable harm, whether to person or property. A similar doctrine of contract law provides that damages for breach of contract may be limited if a non-breaching party fails to take reasonable steps to mitigate the damages resulting from the breach. *Northern Arizona Gas Service, Inc. v. Petrolane Transport, Inc.*, 1702 P.2d 696.

Plaintiff counters the Town's contention that he failed to mitigate his damages by asserting that he did in fact mitigate his damages. Plaintiff contends that he placed Defendant on notice regarding its failure to provide Plaintiff with due process when Defendant revoked SUP-97-4. Thereafter, Plaintiff contends that Defendant, through its attorney, began discussing settlement with Plaintiff. Said negotiation discussions allegedly continued for "the better part of two years". (Doc. 37)[7] Consequently, Plaintiff requests that the Court set this matter for trial to determine the extent of his damages. He contends that he is entitled to nominal damages and attorneys' fees "at the very least", but contends that he can recover compensatory damages for a proven due process violation if the deprivation which was the basis of his substantive claim was unjustified. *Raditch v. United States*, 929 F.2d 478, 481 n.5 (9th Cir.1991). Plaintiff also claims to have suffered significant economic damages and that he is entitled to damages for emotional and mental distress that arose as a result of the deprivation of due process. *Merritt v. Mackey*, 932 F.2d 1317, 1323 (9th Cir. 1991).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED GRANTING** Plaintiff Jim Langan's Motion for Summary Judgment (Doc. 16).

**IT IS FURTHER ORDERED DENYING** Defendant Town of Cave Creek's Cross Motion for Summary Judgment (Doc. 35).

---

[7] There are no affidavits on record filed by either party that address the issue of damages.

- 11 -

**IT IS FURTHER ORDERED** that the Court will set this matter for trial to determine the issue of damages.

DATED this 26th day of April, 2007.

/s/ Stephen M. McNamee
Stephen M. McNamee
United States District Judge

- 12 -